# Supreme Court Decisions.

## LESSOR NOT LIABLE FOR NEGLIGENCE OF LESSEE IN PERMITTING OIL TO ESCAPE FROM TANK.

LANGABAUGH ET AL V. ANDERSON.

Decided, March 31, 1903.

*Escape of Oil from Tank—Flows on to Adjoining Property and Igniting, Burns Building—Action by Property Holder Against Lessor and Lessees—Lessees Charged with Negligence—Error to Withdraw Certain Matter from the Jury—Question of Negligence in Pleading —Lessor Not Liable for Negligence of Lessee, When—Refusal to Charge Jury Reversible Error, When—Contracts—Pleading—Jury.*

1. In an action against the lessor and lessees in an oil and gas lease to recover for the burning of plaintiff's building on a lot adjoining the leased premises, through the alleged negligence of the lessees, whereby oil escaped from a tank on the latter, and flowed under the building and thence down the slope of the hill to a creek where it came into contact with a fire which followed back the trail of oil and burned said building, and the plaintiff's petition on which issue is joined, alleges that such escape of oil resulted from the negligent acts and omissions of duty on the part of lessees, in not safely keeping and caring for the oil, it is error for the court to withdraw from the jury all consideration of the issues joined on the allegations of negligence, and limit its inquiry to the questions:

"First—Is crude oil stored in tanks a highly explosive and dangerous substance and a constant menace to property in its vicinity?
"Second—Did the defendants, or either of them, store crude oil in tanks on Mrs. Scott's property adjoining plaintiff's property, and if so, was the storage of such oil there the proximate cause of burning plaintiff's property?"

On the contrary, the case should have been submitted to the jury on the questions of negligence put in issue by the pleadings.

2. In the trial of such action, where it appears from the evidence, that the lessor leased the lot for the purpose of producing oil or gas therefrom, reserving to herself one-eighth of the oil produced and

175

delivered in tank, or the pipe lines, but reserving no control
or right to direct the manner of drilling, or of the erection of
tanks on the leased premises, but who surrendered complete pos-
session and control thereof to the lessees during the term of lease,
such lessor is not liable to the owner of property to which oil
escapes to its injury, solely through the negligence and omission of
duty on the part of the lessees; and refusing to so charge when
requested by the lessor, is reversible error.

Error to the Circuit Court of Harrison County.

The defendant in error, Hugh T. Anderson, brought suit in the
court of common pleas, against Edward Langabaugh, Arthur Mor-
ton, Frank M. Hardwick and Mary Scott, to recover the value of
a residence owned by the plaintiff in the village of Scio, which, he
claims, was destroyed by fire on the night of March 18, 1899,
through the fault of the defendants, now plaintiffs in error.

The facts stated in the amended petition, and relied upon for
recovery, are in substance, that plaintiff below on and prior to
January, 1899, was the owner of a part of lot 6 in the village of
Scio, and that Mary Scott was the owner of the adjoining lot,
both being in the main part of the village, where houses, mostly
wooden structures, were close together, as was well known to the
defendants; and that on the twenty-sixth day of January, 1899,
Mary Scott entered into a written contract with her co-defendants,
by the terms of which she leased to her co-defendants her lot for
oil and gas purposes, vesting in them the right to drill thereon
for oil or gas, and that the defendants all knew of the danger to
adjoining property in operating said adjoining lot for said pur-
poses. Mary Scott, the lot owner and lessor, was to receive as
royalty, or consideration for said lease, one-eighth of the oil that
might be produced from said lot, delivered in tank or in pipe lines,
the balance of the oil to be the property of the lessees. The plaintiff
alleges that the business of drilling for oil and gas on the premises
leased was hazardous and dangerous to adjoining property, and
further that: The lessees drilled a well on the lot of Mrs. Scott
some time prior to March 18, 1899, which was then producing oil
in large quantities, and that defendants suffered much of the oil to
escape and mix in the ground, so that it become combustible, and
that in the night of that day, an elevated tank which had been

constructed for the temporary storage of the oil, fell over upon the ground, and that the oil therefrom saturated the ground further with oil, and that other large quantities of the fluid from the overturned tank ran over the ground and down a ravine or depression until it reached an open fire, from which it was ignited, and the fire thus caused burned rapidly back along the line of its escape and communicated with the plaintiff's building near said tank, and entirely destroyed it, to his damage, $1,500.

The plaintiff next states, "that the damage thus caused to him, was the direct result of the wrongs and negligence of the defendants, in these, to-wit:

"1.  It was unlawful to locate an oil well or contract for, or permit the same to be drilled upon the lot aforesaid of the defendant, Mary Scott, located as it was in such dangerous proximity to the buildings of the plaintiff, and where if the oil should escape, it would naturally spread out over the ground, and, flowing downward, would become ignited from the fires below.  *  *  *

"2.  In substance, that the surroundings were not properly protected with adequate means of controlling and confining the oil produced, because there was no provision whatever made for preventing the flow of said oil down to the open fires below on other lots, in case of accident to the tank; and further that the tank was elevated upon insufficient supports, by reason of which it overturned.

"3.  The temporary tank was negligently and improperly built and supported, and when filled with oil was liable to topple over, and that its supports were insufficient.

"4.  That when said well was drilled, there was in force an ordinance of the village of Scio, requiring, 'that the oil produced from any well within the village should, until transported out of the village, be securely confined and kept in suitable tanks so as to prevent the same from escaping upon the grounds or other property within the corporation, and that each tank, before used, should have dug surrounding it, a ditch or excavation of sufficient size or dimensions, and be so located that in case of accident to the tank, the oil therein would flow into such ditch or excavation.'  *  *  *
The plaintiff alleges a failure to comply with this ordinance.

"5.  The plaintiff further alleges that the defendant, although aware of the dangers from said well, neglected to keep a proper watch or guard at all over said well at night.  Having thus stated the acts of negligence, the prayer of the petition reads: 'Wherefore

and by reason of the several acts of negligence and wrong herein set forth, plaintiff says he has been wrongfully and negligently injured by the defendants in the sum of fifteen hundred dollars, his damages so as aforesaid sustained, for which he asks judgment.' "

Mary Scott, the lessor of her co-defendants, by answer admitted her ownership of the lot which she leased to co-plaintiffs in error for oil and gas production, and that they drilled a well upon said lot as alleged, but averred that she had no part in the drilling of the well, or in the construction of any tanks on the premises, and she denies that she had any power or control over the operation of said well or any of the devices or means used by her lessees, in producing or caring for the oil or gas produced, and generally denies all the acts of negligence charged against her.

For further defense she alleges, that after the execution of the lease, she moved away from the premises to a residence about five miles from Scio, and that her said lessees took possession of the lot so leased and that whatever they did thereon was without any directions or suggestions from her.

The other defendants, the lessees, by answer admitted the execution of the lease, and the drilling of the well, which produced oil, and denied each and every other allegation in the amended petition. The new matter in the answers, if any was denied by reply.

The evidence adduced on the trial tended to establish that the lot so leased by Mrs. Scott to her co-defendants, as well as the lot of the plaintiff, Anderson, are part of the land in said village which slopes and declines rapidly towards a valley through which runs a creek or stream of water, and the lot of Mrs. Scott is above the lot of Anderson. The fire occurred about 10 o'clock at night, on the eighteenth of March. The owners of the lease had constructed on the leased lot a large storage tank having a capacity of about 250 barrels, and also a smaller tank for temporary storage of about sixty barrel capacity, and this smaller tank was between the well and the larger tank and placed on upright posts a few feet above the ground. A short time before discovery of the fire, this tank, by reason of defect in, or the giving way of the upright posts, turned over, and part of the oil escaping therefrom ran under a

portion of Anderson's house, and thence followed a slight ravine down to the creek and there, or while flowing into the creek, came in contact with fire, ignited and the fire traveled back up the track of the escaped oil until it reached the Anderson premises and consumed the house, and perhaps other property. The record does not show the exact distance from the house to the creek, nor the location of the fire with which the oil came in contact, but it was away from and some distance below the premises of either of the parties. At the close of the plaintiff's testimony Mary Scott and her co-defendants severally asked the court to direct a verdict in their favor, which was refused and exceptions taken.

The court stated generally to the jury the claims of the parties, but did not state or explain the allegations of the amended petition, upon which the trial was had. After saying where the burden of proof rested, and the necessity to a recovery of a preponderance of the evidence, the court charged the jury as follows:

"The three questions of fact which I shall submit to you for your determination in this case are these:

"First. Is crude oil stored in tanks a highly explosive and dangerous substance and a constant menace to property in its vicinity?

"Second. Did the defendants, or either of them, store crude oil in tanks on Mrs. Scott's property, adjoining plaintiff's property, and, if so, was the storing of such oil there the proximate cause of the burning of plaintiff's property?

"Third. If these two propositions or questions are answered in the negative by you, then your verdict should be for the defendants, but if these two propositions or questions are answered by you in the affirmative, then the remaining question for your consideration is: What damage or loss did the plaintiff sustain by reason of the burning of his buildings?

"I submit only these three questions to you for your determination because of the many undisputed facts in this case."

The jury was then instructed that an affirmative answer to each of these questions must be supported by a preponderance of the testimony.

The defendant, Mrs. Scott, asked special instructions, which were refused, and these will be noticed in the opinion.

The defendants excepted to the charge, and to the refusal to charge as requested.

The jury found against all the defendants in the sum of $1,000, for which judgment was rendered, and this judgment was affirmed by the circuit court.

This proceeding in error is to reverse the judgments of both courts.

*Harrison & Aston, A. O. Barnes, John C. Dickerson, Chas. C. Bow* and *John S. Pearce,* for plaintiffs in error, cited and commented upon the following authorities:

*Simpson* v. *Seavy,* 8 Me., 138; *Bowe* v. *Hunking,* 135 Mass., 380; Shear. & Redf. on Neg., 501; *Boyd* v. *Insurance Patrol,* 113 Pa. St., 269; *Gulzoni* v. *Tyler,* 64 Cal., 334; *Bishop* v. *Ely,* 9 Johns. Rep., 294; *Burdick* v. *Cheadle,* 26 Ohio St., 393; *Shindelbeck* v. *Moon,* 32 Ohio St., 264; Broom Max., 861; *Fish* v. *Dodge,* 4 Denio, 311; Wood's Landlord & Tenant, Sec. 384; 1 Addison on Torts, 197; *Fletcher* v. *Rylands,* 3 H. L. R., 330; *McCafferty* v. *Railway Co.,* 61 N. Y., 178; *Hay* v. *Cohoes Co.,* 2 Comst., 159; 1 Redf. Railways, 503; *Heating Co.* v. *Rohan,* 118 Pa. St., 223; *Baker* v. *Westmoreland Gas Co.,* 157 Pa. St., 593; *Stroughton* v. *Natural Gas Co.,* 159 Pa. St., 64; *Prichard* v. *Gas Co.,* 2 Pa. Supr. Ct., 179; 2 Smith's Cases on Torts, 316; *Brown* v. *Collins,* 53 N. H., 442; *Marshall* v. *Welwood,* 38 N. J. L., 339; *Losee* v. *Buchanan,* 51 N. Y., 476; Broom Max., 372; Addison on Torts (6th Ed.), 459; *Ruffner* v. *Railroad Co.,* 34 Ohio St., 96; *Cuff* v. *Railroad Co.,* 35 N. J. L., 17; *Railway Co.* v. *Keighron,* 74 Pa. St., 316; Bishop Non-Contract Law, 42; *Laidlaw* v. *Sage,* 158 N. Y., 73; *Scheffer* v. *Railway Co.,* 105 U. S., 252; *Hoag* v. *Railroad Co.,* 85 Pa. St., 293; *McGahan* v. *Gas Co.,* 140 Ind., 335; *Carter* v. *Towne,* 103 Mass., 507; *Bartlett* v. *Light Co.,* 117 Mass., 533; *Fitzgerald* v. *Paper Co.,* 155 Mass., 155.

*D. A. Hollingsworth,* for defendant in error, cited and commented upon the following authorities:

*Barnes* v. *Settlemoyer,* 62 S. W. Rep., 111; *Railway Co.* v. *Marsh,* 63 Ohio St., 249; Bryan on Oil and Gas, title, "Negli-

gence"; Wood on Nuisances, Sec. 69, note 3; Cooley on Torts, ·142-145; *Id.,* 725; 16 Am. & Eng. Ency. Law, 981; *Kelley* v. *Ohio Oil Co.,* 57 Ohio St., 317; *Gas Fuel Co.* v. *Andrews,* 50 Ohio St., 695; *Coal & Ice Co.* v. *Tucker,* 48 Ohio St., 41; *Huff* v. *Austin,* 46 Ohio St., 386; *Tiffin* v. *McCormack,* 34 Ohio St., 638; *St. Marys Woolen Mfg. Co.* v. *Glycerine Co.,* 7 Circ. Dec., 582; 14 C. C. R., 522; *Brady* v. *Steel & Spring Co.,* 102 Mich., 277; *Bohan* v. *Gas Light Co.,* 122 N. Y. Rep., 18; *Pottstown Gas Co.* v. *Murphy,* 39 Pa. St., 257; *Fish* v. *Dodge,* 47 Am. Dec., 254.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and CREW, JJ., concur.

It may conduce to a clearer understanding of the questions involved in this proceeding, if we notice the relation which the defendants below sustained to each other at the time of the loss by fire, for which recovery was had in the lower court; and with this, the location of the premises from which the oil escaped, and the regulations, if any, which the council of the village of Scio had prescribed with reference to the production and storage of oil within its boundaries.

The plaintiff below, in his amended petition, avers that on the twenty-sixth day of January, 1899, the defendant, Mary Scott, entered into a contract with her co-defendants, by the terms of which she leased to her co-defendants, now her co-plaintiffs in error, her lot in the village, which is above and adjoining the plaintiff's lot, for oil and gas purposes, and attaches to his amended petition, and as part thereof, a copy of the lease. By the terms of this instrument, Mrs. Scott granted and demised to her lessees, all the oil and gas in and under her tract of land in said village with the exclusive right of operating thereon for oil and gas, to lay pipe lines on or over the same, with the further right to remove at any time any property placed thereon by the lessee. The term of the grant was sixty days and as long as oil and gas should be found in paying quantities, the lessees "yielding and paying to the lessor one-eighth part of all the oil produced and sold from the premises, free of expense, in tanks or pipe lines to the lessor's credit."

For the use of half of the house on the premises, the lessees agreed to pay $15 per month. Such are all the provisions of the lease that are important here.

The record shows that Mrs. Scott gave possession of the premises to the lessees and removed to the country several miles from the village, and that the lessees entered upon the lot or lots, and took full possession and proceeded to drill a well for oil or gas, and erected the tanks referred to in the statement of this case.

The plaintiff below, also, by averments in his petition brought upon the record a copy of an ordinance of said village entitled: "An ordinance to protect the property of Scio corporation from injury by fire, explosion and other causes." This ordinance provided that: "The oil produced shall, until transported out of the village, be securely confined and kept in suitable tanks so as to prevent the same from escaping upon the grounds or other property within the corporation; and that each tank before being used, shall have dug surrounding it a ditch or excavation of sufficient size and dimensions * * * that the oil would be restrained by the ditch in case of accident to the tank." A party failing to comply with this regulation was amenable to a fine. Therefore, according to municipal law at that place, the production and storage of oil in tanks was lawful, but they must have about them a trench or ditch to receive escaping oil in case of accident to such tanks.

The production of oil has become an extensive and valuable business, and for several years has been recognized as a legitimate part of our domestic and interstate commerce, and our General Assembly has conferred upon companies organized for the storage and transportation of oil, the right to acquire right of way for pipe lines, erection of tanks, and other means of storage, and such companies are invested with the rights of common carriers and subject to corresponding liabilities. See Sections 3878, 3879 and 3880, Revised Statutes of Ohio.

So neither the production or storage of crude oil is a public nuisance; nor is the storage of it on premises adjacent to or adjoining the premises of another, a private nuisance *per se,* although the method of its use and the neglect to properly care for it may

create a nuisance. The article (oil) itself, has come into common use, and is handled in manifold forms and by various methods, and one can not fairly conclude, that of itself, it is a source of constant danger and menace to property on adjacent premises. If carefully stored in tanks, and the tanks maintained with care, destruction of or injury to neighboring buildings would not be the probable and reasonable result, and if this be true, then the owner of the oil so stored can not be properly charged with storing and maintaining an article which is a constant menace to the property of others.

Yet, the court in the charge eliminated from the case all consideration of the issues joined by the parties on the allegations of negligence, and submitted to the jury an issue not tendered by the pleadings. The cause of action in the amended petition is founded upon acts of negligence and omissions of duty by the defendants, and the plaintiff specifically sets out the acts and omissions upon which he relies for recovery. These charges of negligence were traversed by answers, and so the case stood before the court and jury. Notwithstanding this attitude of the parties and the pleadings, the trial court plainly told the jury that but three questions were for their consideration, viz.:

"First. Is crude oil stored in tanks a highly explosive and dangerous substance and a constant menace to property in its vicinity?

"Second. Did the defendants or either of them store crude oil in tanks on Mrs. Scott's property, adjoining plaintiff's property, and if so, was the storing of such oil there, the proximate cause of the burning of plaintiff's property?"

The third question, in case the jury found affirmatively on the first and second, related to the measure of damages sustained.

In addition to what we have said as to the issues joined on the allegations of negligence, it is not improper for us to say that the evidence adduced by the parties are confined to the questions of negligence, save perhaps the testimony of one witness—Timmons, whom the plaintiff called as an expert upon the nature and character of crude oil, and his testimony is that, "crude oil would be dangerous to a man who knows nothing about it. To my mind.

the way we handle it, we have no more fear of danger with it than in any other business. We would not bring it anywhere in contact with fire. The facts are that when crude oil is warm enough to produce a vapor it would not be safe anywhere, but when cold is perfectly safe—when it is not producing vapor."

It was upon this evidence, or else without any evidence, that the court limited the investigations of the jury, and withdrew the consideration of all the other facts in controversy. The charge was without sufficient foundation, unless it can justly be made to rest upon a mere tendency of the evidence. Therefore the simple points or questions submitted to the jury were to be answered, practically without and independent of any testimony, and much time might have been saved, by giving these brief and simple instructions without the examination of witnesses.

We think that the first two questions involving, as they do, the liability of the defendants, should not have been left so largely to the chance experience and knowledge of the jury. If it was common knowledge in that jurisdiction, that crude oil stored in tanks was highly explosive, a dangerous substance and a constant menace to property in its vicinity, then why not the court take judicial notice of it, and pronounce such storage a nuisance *per se?*

But it is claimed by defendant in error that the charge is supported by sufficient legal authority, and the following Ohio cases are cited: *Tiffin* v. *McCormack,* 34 Ohio St., 638; *Defiance Water Co.* v. *Olinger,* 54 Ohio St., 532; *Bradford Glycerine Co.* v. *St. Marys Woolen Mfg. Co.,* 60 Ohio St., 560; *Gas Fuel Co* v. *Andrews,* 50 Ohio St., 695; *Railway Co.* v. *Marsh,* 63 Ohio St., 236.

We are of opinion that none of these cases supports the charge in review, as an examination of them will show.

In *Tiffin* v. *McCormack, supra,* it appears that the city owned or had control of a piece of ground immediately west of plaintiff's lot, on which was a dwelling house, barn and fruit trees. The city employed a party to quarry stone on its lot for city purposes. Powder was used by the employe to blast a stone, whereby fire was thrown upon the barn and it and the hay and other feed therein contained were destroyed. The city denied negligence charged

and asserted that the blasting was done by an independent contractor. The city was held liable for damages caused by the fire.

But would it have been proper in that case for the court to have submitted to the jury the question whether the stone in the quarry was dangerous and a constant menace to property in its vicinity? It was the fire thrown by the blast upon the building which caused the injury. So in the case at bar; the presence or storage near by of crude petroleum did not burn the plaintiff's property. If the oil escaped by the negligence of defendants, and came in contact with fire beyond the premises, it was the burning oil which ignited the buildings.

In *Defiance Water Co.* v. *Olinger, supra,* the first clause of the syllabus shows that negligence or want of care was relied on to recover, viz.:

"One who collects on his own premises a substance liable to escape, and if it should escape, likely to cause mischief, must at least use reasonable care to restrain it. If for want of such care, it escapes and injures persons or property rightfully on adjoining premises, he is answerable for the damages sustained on account thereof."

That case was tried in the lower court on issues as to the negligence of the water company; and would it have been proper in that case, for the court to submit to the jury the question, whether water when stored in the tower, was a dangerous fluid and a constant menace to property in its vicinity? Certainly not. And the groundwork of the action in that case was a charge of negligent construction and maintenance of the water tower.

In *Bradford Glycerine Co.* v. *St. Marys Woolen Mfg. Co., supra,* there was a storage of nitro-glycerine, a very high explosive, and without proving negligence, it was held that the owner of the explosive was liable for damages caused by its explosion. The difference between the storage of water, stone, crude oil and nitro-glycerine, is marked and easily comprehended, and this point of difference applies in gun powder cases, and other cases arising out of injuries from explosives. The latter are at all times, in all places and under all circumstances, dangerous. They are made

for their dangerous qualities, and are bought, sold and used as explosives, and hence the owner assumes at once the liability of their accomplishing natural and probable results. No so as to crude petroleum.

In *Gas Fuel Co.* v. *Andrews,* this court held that the provisions of Section 3561a, Revised Statutes, imposes on the gas company the duty of keeping the natural gas under its control while transporting the same, and that if damages resulted to others without their fault, by its explosion, the company would be liable, although not negligent in regard thereto. This holding is because of the statute, and the court did not go further in the case.

We are unable to perceive the reason for defendant in error citing *Railway Co.* v. *Marsh,* 63 Ohio St., 236, for there is nothing in it to support the doctrine of the charge of the court in this case.

The celebrated and much criticised case of *Fletcher* v. *Rylands,* 3 H. L. R., 330, is cited and relied on by defendant in error; and in *Defiance Water Co.* v *Olinger, supra,* the former case was quoted from and one of its rules received the approval of the majority of the court, but in the opinion announced on page 540, Bradbury J., says:

"This doctrine would seem to be in exact accord with justice and sound reason, but in the case before us we are not required to apply it to its full extent, because the defendant in error, in her amended petition, expressly avers negligence in the construction of the stand-pipe, as well as knowledge that it had afterward cracked and become weakened."

As yet no decision of this court has adopted the entire scope of *Fletcher* v. *Rylands,* and while it holds in general, a good and wholesome doctrine, resting on good morals and sound reason, its application should be made with suitable and necessary limitations.

In the case at bar, the trial court it seems exceeded even the latter case, because the application of its doctrine primarily would make the owner and storer of the oil tank responsible for its escape onto adjoining premises, and resulting damages from such oil. To this extent the authority is good and may be so accepted. But in this case the action is not for damage by overflow of the oil, but

that after oil had run over and away from the plaintiff's premises some distance, it was intercepted by fire which followed the oil trail back to his buildings, and that this resulted from negligence of defendants in not using proper means to prevent the escape of the oil, they knowing all the time that there were open fires in the valley below which might fire oil that found its way thither. Moreover, we think the charge of the court transgresses the principles of *Ruffner* v. *C., H. & D. R. R. Co.,* 34 Ohio St., 96; and *Huff* v. *Austin et al,* 46 Ohio St., 386.

In the latter case F. & Co. sold to defendant a saw mill and sent the plaintiff, an employe, with the mill to aid in setting it up. While so at work, a steam boiler owned and used by defendants on their premises to run the saw mill exploded, and injured the plaintiff. It is held that the explosion did not raise a *prima facie* presumption of negligence on the part of the defendants. In the opinion the court say:

"The defendants had a right to place the steam boiler on their premises. Used as it was to run the saw mill, it was in no sense a nuisance. As an agent in the various departments of industry, the steam engine has become a necessity in modern life. But though placed on one's own premises, the owner of a steam engine and boiler will be held responsible for his negligence, if he so operates the same as to injure one who comes lawfully upon the premises by invitation or permission. Though doing a lawful act upon his own premises, he will be liable for injurious consequences that may result from it to another, if it was so done as to constitute actionable negligence. In such case there is a proper application of the rule that one should enjoy his own property in such manner as not to injure that of another."

In our judgment, the court erred in limiting the jury as was done, and that the case should have been submitted to it on the issues joined upon the allegations of negligence contained in the amended petition. Thus far we have considered the legal right of all the defendants to complain of the charge.

There is more to be said as to the case against Mrs. Scott, the lessor of her co-defendants. After some reluctance she, like many other lot-owners, residents in Scio, leased her lot to her co-defend-

ants, as already described, and removed several miles from the village. The village clerk testifies that from 250 to 275 wells had been drilled within its borders, which indicates that the oil fever had become epidemic. It was but reasonable for her to presume that her lessees would erect tanks and drill for oil on the leased premises; but she contributed nothing in any manner to the drilling of the well, or placing of the tanks. She surrendered complete and absolute possession and control to her tenants. She had no interest in what might be done there, except that when the oil was produced, she was entitled to one-eighth of the same in the pipe line. It is true, as shown in the instrument of lease, there is a stipulation, that if her house should be destroyed by fire, the tenants would replace the same, or purchase the entire premises, with $4,000, if the fire was through any negligence of the lessees. This bound them for destruction by negligence and not absolutely, and it was a contract between the parties to the instrument and could in no manner inure to the benefit of third persons. However the court charged in substance that if she knew, or might have known by the exercise of due care, that her lessees were liable to store oil upon her lot, and the oil escaped from the premises and reached a fire which ran back to and destroyed buildings on adjoining premises, she would be jointly liable with the lessees. .

From the tenor of the charge, such guilty knowledge or means of knowledge, was sufficient to fix her liability, although she directed nothing and did nothing. We can not believe that such is the law in her case.

If storing oil in tanks on her lot was dangerous, and the stored oil a constant menace, she was not a party to either. Merely permitting another to commit a nuisance does not render one liable for its consequences. .

Wood on Landlord & Tenant (2d Ed.), in Section 536, sums up a discussion of the liability of the landlord, as follows:

"The rule may be stated, as the result of the authorities, to be, that in order to charge the landlord the nuisance must *necessarily* result from the ordinary use of the premises by the tenant, or for the purpose for which they were let; and where the ill results flow from the improper or negligent use of the premises by the tenant,

or, in other words, where the use of the premises may or may not become a nuisance, according as the tenant exercises reasonable care, or uses the premises negligently, the tenant alone is chargeable for the damages arising therefrom."

We have observed that the storage of crude oil is not of itself a nuisance to adjacent or adjoining premises; and if the lessor even knew that oil would be produced by drilling and stored on the leased premises, she would not be contemplating the creation or maintenance of a nuisance, unless she also knew that it would be negligently stored and cared for by the lessees, and it can not be held as a matter of law, that the lessor should presume that the lessees would be negligent in that behalf.

Some of the principles announced by this court in *Burdick* v. *Cheadle*, 26 Ohio St., 393, are applicable here. In that case it appears that Cheadle owned certain premises which he fitted up for the sale of dry goods and groceries by his tenant, and he agreed with the tenant that he would construct the shelving and other fixtures and fasten them to the wall so that they would be safe. These were put in the room by the landlord so carelessly and negligently, that they fell upon and injured a customer of the tenant, who brought suit against Cheadle for damages. This court held the customer could not recover. On pages 396-7, McIlvaine, J., says:

"Indeed, the noxious fixtures complained of did not amount to a nuisance at all in the legal sense of the term. They were not maintained in violation of any right of the public, or of any member of the public. They were made unsafe, it is true, but did not tend to endanger the person or property of strangers to the premises. They were made unsafe to persons and things which might be for the time being in the store-room, but no person or thing could rightfully be there, except by the permission and upon the request of the lessees. * * * Whatever, therefore, may be the rights of the plaintiff as such customer of the tenant, it is quite clear that he has no remedy against the lessor, as the erector or maintainer of either a public or private nuisance."

Mrs. Scott requested the court to charge:

"If the jury find that Mary Scott leased the premises in question to the co-defendants and surrendered the possession and con-

trol of them to them, and had nothing to do with the building of tanks and other devices for producing, storing and taking care of the gas and oil, then I charge you that she is not liable to the plaintiff, and the verdict as regards Mary Scott should be for her."

The proposition is not very artistically worded, but it contains the law which should have been applied to the facts in her case, and it was error to refuse to so charge.

For error in the charge given and for error in refusing to charge as requested by Mrs. Scott, the judgments of the lower courts are reversed; and on the undisputed facts, we find for Mary Scott, plaintiff in error; judgment is rendered in her favor. As to her co-plaintiffs in error this cause is remanded for further proceedings according to law.

*Judgment reversed.*